## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | **Criminal No. 1:19-CR-007 (TSC)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MASOUD KHAN** | ) | **(UNDER SEAL)** |
| **Defendant** | ) | |
| | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**I.      INTRODUCTION**

Masoud Khan comes before this Honorable Court thoroughly humbled and  remorseful

for his actions. On February 1, 2019, he entered a guilty plea in this matter to one (1) count of

False Statements Involving International Terrorism, in violation of 18 USC § 1001(a)(2).

In 2011, Mr. Khan reached out via email to a number of Muslim scholars regarding some

mental health issues he was dealing with, diagnosed by Dr. Reza Golesorkhi in 2012 as anxiety,

depression, and paranoid schizophrenia. PSR at ¶ 20, ¶ 67. Only one scholar responded, S-1, who

resided in Jamaica and encouraged violence and terrorist acts, on behalf of and in support of

ISIS. PSR at ¶ 13, ¶ 20. Mr. Khan developed a relationship with S-1, one where he felt

"personally connected." PSR at ¶ 20.  S-1 influenced Mr. Khan to respond in certain ways to FBI

inquiries and Mr. Khan was swayed in part to do so because of this personal connection. PSR at

¶ 19. Mr. Khan realizes now that S-1 was a terrible influence on him and that he has many

healthier resources for him at home.

Mr. Khan has not wallowed in self-pity or dwelt in the past, rather, he has apologized to

his family and taken the courageous step to ask for and accept their help and help from the

community. He has conducted a self-examination of what led him to make such destructive

1

choices and committed himself to making a positive impact on those around him, no matter his

present circumstances. Mr. Khan will achieve this goal through his committed effort, the

overwhelming dedication of his family and the community members that have promised to

mentor and counsel him.

Through undersigned counsel, Mr. Khan respectfully submits this Memorandum in support

of a requested sentence of time served and a period of supervised release. Such a sentence is

"sufficient, but not greater than necessary," to achieve the purposes of sentencing set forth in 18

U.S.C. § 3553(a)(2).

## II.    THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *Gall v. United States*,

552 U.S. 38, 39 (2007), it may not treat that range as mandatory or presumptive, *Id.* at 51; *Nelson*

*v. United States*, 555 U.S. 350, 352 (2009), but as "one factor" among several" to be considered

in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85,

90 (2007). The Court must "consider all of the § 3553(a) factors . . . make an individualized

assessment based on the facts presented," *Gall* at 49-50, and explain how the facts relate to the

purpose of sentencing. *Id.* at 53-60; *see also Pepper v. United States*, 131 S. Ct. 1229 (2011).

The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than

necessary' to accomplish the goals of sentencing." *Id.* at 1242-43.

In order to ensure that the guidelines are truly advisory and constitutional, this Court has

the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now

advisory…, as a general matter, courts may vary [from Guidelines rangers] based solely on

policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at

101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007)

(district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper*, 131 S. Ct. 1229, 1240 (2011) (citing *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Forman*, 436 F.3d 638, 644, n.1 (6th. Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2nd Cir. 2006).

## III.   THE APPLICABLE GUIDELINE RANGE

Pursuant to the plea agreement filed with this court on February 1, 2019, the parties agreed to the following calculation under the U.S. Sentencing Guidelines:

U.S.S.G. § 2J1.2(a) – Base Offense Level..................................................................14

U.S.S.G. § 2J1.2(b)(C) – Specific Offense Characteristic........................................12

U.S.S.G. § 3C1.1 – Obstruction of Justice…………………………………………….2

U.S.S.G. § 3E1.1(a) – Acceptance of Responsibility ...............................................-2

U.S.S.G. § 3E1.1(b) – Acceptance of Responsibility...............................................-1

*Total Offense Level* ....................................................................................................25

(Advisory Guideline range of 57 to 71 months) PSR at ¶ 6, ¶ 92.

Mr. Khan's criminal history, which consists of six (6) general traffic convictions and one (1) marijuana possession conviction, establishes a criminal history category of I. PSR at ¶ 41-48.

In its Sentencing Memorandum ("Govt. Memo"), the government requests a sentence of 18 – 24 months of incarceration. *Govt. Memo* at p. 1.[1]

## IV.     18 U.S.C. § 3553(A) FACTORS

Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 552 U.S. at 50 n. 6. The command is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper*, 131 S. Ct. at 1240 (*citing Williams v. New York*, 337 U.S. 241, 247 (1949)). It is similarly consistent with Congress' express directive that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct." *Id.* (*citing* 18 U.S.C. § 3661).

### A.  OFFENSE CONDUCT

The offense conduct is extremely serious. It is clear, however, that Mr. Khan, who has been afflicted with significant mental health issues for much of his life, was being influenced by S-1.

### B.  MR. KHAN 'S PERSONAL HISTORY AND CHARACTERISTICS

Mr. Khan realizes that S-1 had a strong influence on his actions; rather than asking S-1 for help, he should have been asking his family and other members in the community for aid. Mr.

---

[1] Counsel believes that the justifications for the government's request also support the defense's position that Mr. Khan recognizes the seriousness of his actions, that the public will be protected from further action by Mr. Khan, and that he is deterred from future criminal conduct.

Khan's family members were shocked by his arrest and were unsure of the circumstances surrounding his arrest. PSR at ¶ 53. Mr. Khan is a "family guy" who is very involved with every family member. *Id.* He maintains a close relationship with his siblings, his children, and his nieces. *Id.* He is a "loving father" and "kind-hearted." *See* Exhibit D, *Letter from Habib Tora.* His father describes Mr. Khan as having a "kind and merciful nature." *See* Exhibit C, *Letter from Mahmoud Khan.* "He is a good son, and a caring person […] committed to care of his mother and father, wife and children." Exhibit E, *Letter from Safiya Samman, Ph.D.* His most notable commitment to his parents is his aid in making mortgage payments for the family residence. PSR at ¶ 53. Mr. Khan is remorseful for the negative effect his actions have had on his closely-knit family. PSR at ¶ 52, ¶ 54.

Mr. Khan "is an incredibly honest worker." *See* Exhibit D. He started working at various pizzerias before becoming a delivery driver for Grubhub, Postmates, and then Amazon. PSR at ¶ 78-83. Diagnosed with depression, anxiety, and paranoid schizophrenia back in 2012 by Dr. Golesorkhi, Mr. Khan is ready to take that same honest work ethic and apply it to overcoming his mental health issues. He is committed to resuming mental health services in Woodbridge, VA.

Mr. Khan's future plans do not include acts of terrorism. He plans to complete his Associate's degree [he is one class short of completion] at Northern Virginia Community College and hopes to then enter George Mason University in order to obtain a degree in Information Technology. PSR at ¶ 59; *see also* Exhibit D. He hopes to ultimately move out of his parents' residence, purchase his own home nearby and rear his children with his wife. *See id.*

The requested sentence accurately reflects and is proportionate to Mr. Khan 's conduct and satisfies the mandate of U.S.C. 3553(a).

### C.  PROTECT THE PUBLIC

Section 3553(a)(2)(C) requires the court to consider the need to protect the public from the defendant when imposing a sentence. At this point, Mr. Khan does not represent any threat to the public. His conduct was based in large part out of fear of prosecution. Mr. Khan has stated "he was instilled good values at home" and "he [does] not want to hurt innocent people." PSR at ¶ 55, ¶ 18.  His father has removed all weapons from the family home. *See* Exhibit C.

### D.  DETRRENCE

Section 3553(a)(2)(B) requires the court to consider the need to afford adequate deterrence to criminal conduct when imposing a sentence. As courts often recognize, actions by those convicted of crimes speak louder than words. Mr. Khan has spent approximately one year at the DC Jail.  This year has taught him a valuable lesson; Mr. Khan has no desire to ever be incarcerated again and will not take any action that would remotely trigger that possibility.

Mr. Khan looks forward to the mentorship and counsel from his family and those in the community.   Safiya Samman, Ph.D.  the Chair of Sister's Affairs MAV, has committed to working with Mr. Khan.  Mr. Khan's brother-in-law, Ahmad Khalilullah, will meet with him two times per week.  As well, various other family members have committed to spending time with Mr. Khan throughout each week in order to make sure he is supported emotionally and spiritually. *See* Exhibits A, B, *Letter from Rafi Uddin Ahmed*, Exhibit E; *see also* PSR at ¶ 60. Mr. Khan has made it clear by his actions that he wishes to do everything in his power to prove he will not commit a crime again.

For the reasons set forth above, Mr. Khan, by and through undersigned counsel, respectfully requests that the Court impose the requested sentence of time served along with a period of supervised release.

Respectfully submitted,

David Benowitz
*Counsel for Masoud Khan*
DC Bar # 451557
Price Benowitz LLP
409 7th Street, NW, Ste. 200
Washington, DC 20004
o (202) 417-6000
c (202) 271-5249
David@PriceBenowitz.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2019, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to Assistant United States Attorneys Tejpal S. Chawla and Karen Seifert, United States Attorney's Office, 555 4th St. NW, Washington, DC 20530.

David Benowitz

# EXHIBIT A

Dear Honorable Judge,

My name is Cemal Gumus. I am the imam (prayer leader) at Dar Alnoor Mosque. I have been the imam of this mosque for past 12 years. Part of my job is to teach the children in the community the basic teachings of Islam. Prior to becoming the imam of Dar Alnoor, I have taught him Masoud since his childhood.

In a personal level, I know Masoud and his family who are of the same ethnic group in Afghanistan as my wife (Uzbeks). Masoud is a soft spoken, bright young man. As an imam at the mosque it is part of my job to advise and guide the youth like Masoud to the right path.

I strongly believe Masoud is a nonviolent community member as father, son and husband and I believe he should be with and returned home to his family. If there is anything that I can help to facilitate this procedure I will be happy to do so.

Sincerely Yours,


Cemal Gumus



# EXHIBIT B

May 23, 2019

Dear Honorable Judge,

My name is Rafi Uddin Ahmed. I am the president of Muslim Association of Virginia Inc (MAV) which operates two Islamic centers In Prince William County, Dar Alsalaam located at ███████ ██████████████████████████ and Dar Alnoor Islamic Community Center located at ██████ ████████████████████████ I have lived in the area for 26 years and actively involved in community issues in my capacity for past 20 years.

My family and I have known Masood Khan and his family for past approximately fifteen years. In fact, his sister Khadija Khan went to school with my daughter. I Know Masood's father, he is one of the regular attendees of Friday prayers in Dar Alnoor Islamic Community Center.

Masood attended our afternoon religious programs at Dar Alnoor. Cemal Gumus the official imam (prayer leader) of the mosque will confirm that in a separate letter.
As the president of MAV and a person who has been involved in wellbeing of Muslim community in Prince William county, I want to offer my support for any advice that will come from you honorable or others who are involved in Masood Khan's case. We do have programs through which we can educate people like Masood Khan to make better choices in their future endeavor. We will guide him to be a productive member of our community as well as for his own family.


Thanks,
Rafi Uddin Ahmed
President,
Muslim Association of Virginia

██████████████

# EXHIBIT C

Dear Honorable Judge:

I, Mahmoud Khan am writing this letter in relation to my son:

> Masoud Khan,
> Resident of

I am certain and I know for a fact that due to Masoud's kind and merciful nature, my son Masoud Khan did not like hunting and does not condone it as a hobby. There were times that he has openly expressed his opinion and objection to my hunting hobby.

I have been a licensed hunter and it has been my hobby for decades. I love my hobby and it has been difficult for me to remove my hunting gear. But after your honorable court representative's visit to our residence and her conversation with us, and per our understanding of her request during the visit;

I hereby confirm and state the fact that I, Mahmood Khan, have already removed all and every hunting gear and equipment including my shot gun, rifle, bow and cross bow from our family residence at

Respectfully,

Mahmoud Khan

# EXHIBIT D

May 5, 2019

Honorable Judge
RE: Masoud Khan

Your Honor,

My name is Habib Tora. I work as a project manager for Capital One in the cyber security division.

I respectfully request that you consider providing leniency in the case against Masoud Khan. Masoud is my cousin, and I have known him for my entire life. We've spent a lot of time together. He is the loving father of two children, one of whom is only a few months old.

He is an incredibly honest worker, has a carefree demeanor and is kind-hearted. Masoud is harmless. He has aspirations to complete his education and enter the information technology workforce. Given his circumstance regarding his diagnosed mental illnesses, he has handled himself with exceptional grace. I am fully supportive of him and will continue to be in the future.

Sincerely,
Habib Tora

# EXHIBIT E

To Whom It May be of Concern

May 15, 2019

I have known Masoud Sayed Khan and his family since 1998. We have celebrated many holidays together, baby births, graduations, marriages and many more together. His friends are friends of the family and are known in the community. We are a close knit community that has grown together since our children were young. I went to his wedding and know his wife and children well. He is a good son, and a caring person. He is committed to taking care of his mother and father, wife and children.

Our community does not support terrorism, on the contrary we preach acceptance and a peaceful coexistence with our Christian and Jewish neighbors. Masoud was born and raised here in Virginia and has the same values and beliefs. We frequently have lunches and meetings with nearby churches and synagogues and they can vouch for our openness in the community. He and his family have participated in these functions to promote understanding and friendship among people in the community.

When Masoud was arraigned, I for one was shocked, because in all of my interactions with him I never heard in his opinions extreme tendencies, or ideas that could be alarming. A soft spoken person, a listener, and most importantly a man with a family that he feels great responsibility toward and loves a lot. His beautiful wife and their two daughters are a pleasure to have around; that happens only with loving husband and a caring father.

We hope to see Masoud back in our community soon, he would be greatly welcomed into our activities and part of our community.

I always thought of him as a good role model for others, because of his manners, connection to the Creator and beautiful demeanor.

Best Regards,

Safiya Samman, Ph.D.

Chair of Sisters' Affairs MAV